UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CRYSTAL GIBSON, | ) |
|    Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:23-CV-167-HAB |
| MARTIN J. O'MALLEY,<br>Commissioner of Social Security, | ) ) ) ) |
|    Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Crystal Gibson's ("Gibson") appeal of the Social Security Administration's Decision dated September 28, 2022 (the "Decision") which found that Gibson was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be affirmed.

**ANALYSIS**

*Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and

quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

***Procedural Background***

Gibson protectively filed an application for benefits on May 25, 2021, alleging disability beginning April 24, 2021.[1]  The claim was denied initially and on reconsideration.  On June 23,

---

[1] Gibson filed a prior application for disability benefits on June 17, 2019, alleging disability as of
(continued...)

2022, the parties participated in a telephone hearing before an ALJ. The ALJ issued an unfavorable decision on September 28, 2022 (R. 16-33). This appeal followed.

***The ALJ's Decision***

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*,

---

[1](...continued)
February 13, 1991. After a hearing was held before an ALJ, this application was denied on April 23, 2021. No further action was taken on this application.

245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Gibson did not engage in substantial gainful activity since May 25, 2021, the application date. At step two, the ALJ determined that Gibson had the following non-severe impairments: history of cystitis/urinary tract infection. (R. 19).The ALJ further found that Gibson had the following severe impairments: history of seizures/syncope with associated chronic gliosis and encephalomalacia; history of headaches; iron deficiency anemia; history of asthma and bronchitis; and persistent depressive disorder/dysthymia with anxius distress. (R. 20).

At step three, the ALJ found that Gibson did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)". (R. 20). At step four, the ALJ found that Gibson had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except only occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes or scaffolds and no balancing; needs to avoid concentrated exposure to extreme cold, heat, humidity, loud noise, bright/flashing lights, and pulmonary irritants, including fumes, odors, dust, gases, poorly ventilated areas and chemicals; needs to avoid all exposure to hazards, including operational control of dangerous moving machinery, unprotected heights, slippery/uneven/moving surfaces and use of moving vehicles. Mentally, the claimant is limited to understanding, remembering, carrying out detailed but not complex tasks with the ability to sustain those tasks throughout the eight-hour workday without frequent redirection to task; work that does not require satisfaction of strict or rigid production quotas, does not involve assembly-line pace work or hourly quota work; and only superficial interactions with supervisors, coworkers, and the general public, defined as occasional and casual contact with no prolonged

>conversations and contact with supervisors is short but allows the supervisors to give instructions.

(R. 25).

Also at step four, the ALJ found that Gibson has no past relevant work. However, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Gibson can perform. (R. 31). Thus, the ALJ ruled that Gibson was not disabled, as defined in the Social Security Act. (R. 32).

***The ALJ's Determination of Gibson's RFC***

Gibson contends that the ALJ failed to incorporate the combined effects of all of her impairments. Specifically she claims that psychiatry specialist Basem Alsarraj, M.D., diagnosed Speech Sound Disorder, but the ALJ failed to acknowledge the diagnosis. The Commissioner notes, however, that the ALJ considered the minimal evidence of a speech impairment and accommodated the impairment by limiting Gibson to superficial interactions with supervisors, coworkers and the general public. (R. 24). Although Dr. Alsarraj diagnosed a Speech Sound Disorder, there is no evidence that Gibson had deficits in speech, and Gibson fails to identify any examination findings that note abnormalities in her speech. Rather, the only time Gibson exhibited mildly delayed speech was during the consultative examination requested by the Social Security Administration. (R. 24). Clearly, Gibson has failed to demonstrate that there was evidence establishing that a Speech Sound Disorder required additional limitations beyond those that were included in the RFC finding. Gibson also failed to identify any specific evidence in her treatment record indicating that further limitations were warranted.

Gibson next makes a confusing argument that "the ALJ opinion goes at length to discredit

Plaintiff for her perceived issues with numb leg ... but fails to contemplate the extend [sic] to which such confusion is driven by, corresponding parietal lobe damage." (Plaintiff Brief at 6). Gibson is apparently contending that her parietal lobe damage may cause her to ignore the serious nature of her alleged disorder or deny its existence. The portion of the ALJ Decision discussing Gibson's numb leg is as follows:

> It appears that the claimant first complained about her extremities becoming numb during the September 2021 consultative examination requested by the Social Security Administration. That being so, Dr. Jan recorded that the claimant had 5/5 grip strength and 5/5 bilateral upper extremity and bilateral lower extremity strength (Ex. B7F). It does not appear that the claimant complained about numbness again, until May 06, 2022, the month before her hearing, maintaining that she had right leg numbness, and when she was not having seizures, she had to drag it along. The claimant's provider that day, Ms. Masters, did not record an observation that the claimant ambulated with an abnormal gait (Ex. B10F), and gait examinations documented before and after the claimant filed this application, in June, September, and October 2020, as well as September and October 2021, did not describe abnormalities (Ex. B1F, B4F, B7F, B11F).
>
> Additionally, the record was left open until September 12, 2022, when counsel indicated that " … we do not anticipate filing anything else," (Ex. B16E p. 01), and the claimant did not submit additional treatment records after the above-mentioned May 06, 2022 appointment that confirmed ongoing complaints about leg numbness, or observations that the claimant walked with an abnormal gait. Since there is no evidence that this reported limitation persisted for 12 continuous months since the application date, and there is no evidence that it could reasonably be expected to continue for 12 consecutive months into the future, it is not accommodated within the residual functional capacity beyond limiting the claimant to never climbing ladders, ropes, or scaffolds, no balancing, and avoiding all exposure to hazards, as fully described at Finding 5. The previously described limitations also provide for the claimant's safety should she experience a seizure or dizziness while at work.

(R. 28-29).

Gibson appears to be arguing that the ALJ should have found her numb leg an impairment, even with the lack of evidence the ALJ noted, because she might have had a numb leg at other appointments but her brain impairment prevented her from saying anything about having a numb leg. However, there is simply no evidence to support this argument and, thus, it is not a basis for

remand.

Gibson next makes a rambling argument concerning her seizures and lack of mental health treatment. (Plaintiff Brief 8-10). The gist of the (basically incomprehensible) argument appears to be a claim that "the ALJ fails to consider the extent to which the underlying brain condition leaves Plaintiff symptomatic, with therapy or not an insubstantial data point." (Plaintiff Brief at 9). Gibson further claims the ALJ failed to acknowledge her ongoing and regular mental health treatment attempts, and her memory issues. (*Id.*).

In the Decision, the ALJ spent considerable time discussing Gibson's lack of mental health treatment:

> In May 2021, the claimant filed this claim, and several days later, the claimant presented at the Northeastern Center for an intake assessment that notes, "Crystal reports her attorney for disability wanted her to come in and see what NEC thought about what is going on with her seizures. Crystal reports she is not currently working due to her seizures and she does not like being at home and not doing anything" (Ex. B1D, B6F p. 03, B11F p. 01).
>
> That day, the claimant also mentioned that she is busy cleaning and taking care of others, so she forgets to take care of herself (Ex. B6F p. 09, B11F p. 05), most of her time is spent with her children, engaged in activities with them (Ex. B6F p. 10, B11F p. 39), and she likes to spend time with her children, going to the park, and going for walks (Ex. B6F p. 13). Although she admitted that she is more anxious around people rather than places, it appears that the claimant did not initially seek mental health treatment for depression or anxiety (Ex. B6F).
>
> The next month, June 2021, the claimant went to individual therapy and reported that she is working with Forbes Disability regarding filing, and they referred her here. She complained that she felt down, agitated, wanted to sleep, and did not have motivation. She added that if she overworked herself, she could trigger a seizure (Ex. B6F p. 01, B11F p. 52). After this, the claimant did not consistently participate in therapy. As one example, her July 2021 Northeastern Center Person Centered Recovery Plan indicates she was not meeting regularly with a therapist to develop new coping skills, but she was reportedly better with depression (Ex. B8F p. 12, B11F p. 33). As another example, an October 21, 2021, Northeastern Center record confirms that the claimant saw her therapist once for an introductory session and then missed or canceled five appointments after that (Ex. B8F).

> Two days before, on October 19, 2021, although the claimant had not attended her therapy appointments, she returned to the Northeastern Center and met with Basem Alsarraj, M.D., who recorded that the claimant " … presents today as her disability attorney suggested psych eval." (Ex. B11F p. 44). The claimant complained about a low mood and decreased interest, yet during the mental status examination, she had normal attention and concentration, a coherent thought process, no memory deficits, good judgment and insight, appropriate eye contact, and was oriented to person/place/time/situation (Ex. B11F). Dr. Alsarraj did not want to prescribe medications because of the claimant's seizures and instead recommended consistent therapy; however, it appears the claimant only attended therapy once more, in November 2021 (Ex. B8F, B11F).
>
> During the June 2022 hearing, the claimant testified that she normally talks to her therapist, and she confirmed that it helps, yet the treatment records reveal that the claimant did not consistently meet with a therapist since she filed this claim, and no evidence has been submitted into the record to the contrary, which was kept open through September 12, 2022, when counsel submitted a letter that " … we do not anticipate filing anything else" (Ex. B16E p. 01).

(R. 23-24).

Thus, even though the record was left open to enable Gibson to submit evidence supporting her claims regarding mental health treatment, Gibson failed to present any such evidence. In the absence of any evidence that the ALJ should have considered, but failed to do so, Gibson's arguments fail.

Gibson also makes an argument concerning the ALJ's discussion of her work activity. The ALJ's discussion is as follows:

> Although the State Agency medical consultants determined that the claimant could perform medium work (Ex. B4A, B6A), and in September 2021, either the consultative examiner or the claimant felt that she could carry 20 pounds short distances and lift 10 pounds over her head at one time – which suggests that the claimant could at least perform light work – the undersigned found that the evidence established that the most the claimant can do is lift, carry, push, and pull at light exertion.
>
> As indicated above, light work can be performed when seizure triggers are minimized, and the State Agency medical consultants' prior determinations persuaded the undersigned to similarly find that the claimant should avoid concentrated exposure to extreme cold, extreme hot, humidity, fumes, odors, dusts,

> gases, and poor ventilation. The limitations previously described, which are generally included within the residual functional capacity defined at Finding 5, prevent the onset of a seizure and reduce headaches, which the claimant did not consistently complain about after she filed this claim, but testified are brought on by seizures, bright lights, or loud noises. In order to prevent headaches and seizures, the undersigned further restricted the claimant to avoiding concentrated exposure to loud noise and bright/flashing lights (Ex. B6F, B7F, B10F, B11F, B13F).
>
> The residual functional capacity assessment also minimizes seizure triggers by limiting the claimant to performing detailed, but not complex tasks that are not performed with strict or rigid production quotas, such as assembly-line pace or an hourly work quota. The previously described restrictions are supported by the claimant's own statements given in May 2022 that, "[s]he started working and is trying to maintain a pace that will not bring on her seizures" (Ex. B11F p. 09). Although the State Agency medical consultants determined that the claimant could understand, remember, and carry out detailed but complex tasks, they did not have the benefit of considering the claimant's more recent statement, given in May 2022, about how she tried to maintain a pace at work that would not cause a seizure. So, the undersigned also included the additional pace restrictions in the claimant's current residual functional capacity assessment (Ex. B4A, B6A).

(R. 27-28).

Gibson argues that the ALJ equated the ability to do part-time work with the ability to do full-time work. (Plaintiff Brief at 10-11). Clearly, however, the ALJ was evaluating Gibson's part-time work in order to determine what limitations to include in the RFC, such that Gibson's seizures would not be triggered. As the Commissioner points out, Gibson has not indicated what additional restrictions would be appropriate, but jumps to the conclusion that she cannot perform any full-time work at all. Such a conclusion is not supported by the record, and the Court finds no error in the ALJ's discussion of this point.

Gibson also contends that the ALJ relied on evidence not in the current record. As noted earlier, Gibson had a prior application which she pursued through the hearing and decision, but then did not appeal the unfavorable decision to the district court. Rather, Gibson filed a new application. Gibson notes that the current record does not include certain exhibits from the prior

record. However, although the ALJ discussed evidence dated before the date of the current application, those treatment records were all exhibits in the current application. (R. 26, 29, 323-76, 412-16). Thus, the ALJ did not err.

Gibson further claims that the ALJ did not articulate her credibility determinations. However, the record clearly shows that the ALJ made specific references to Gibson's lack of credibility with respect to the severity of her dizziness and the frequency of her seizures, and found that Gibson's contentions were not supported by the evidence. (R. 25, 31). Additionally, the ALJ pointed out instances where the medical evidence did not support Gibson's allegations regarding her leg numbness, memory issues, and her anxiety. (R. 25-31).

Gibson cites to *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), to support her contention that the ALJ must do more than simply find that the evidence does not support the claimant's allegations of pain and limitations. In *Villano*, the Seventh Circuit criticized an ALJ who described a claimant's daily activities but failed to explain whether the activities were consistent or inconsistent with the claimed limitations. In the present case, however, the ALJ explicitly detailed her reasons for discrediting Gibson's testimony. For example, the ALJ noted discrepancies between what Gibson told consultative examiner Dr. Jan regarding her ability to stand and walk, and her vague testimony at the hearing where she claimed she could sometimes walk but it made her dizzy. (R. 25). The ALJ further noted that if Gibson had been as limited as she alleged, she would have some signs of muscle wasting, citing to SSR 16-3p. The ALJ then discussed Gibson's daily activities, noting that she liked to go to the park with her children and going for walks. Additionally the evidence showed that Plaintiff had normal gait with no decreased muscle strength, or signs of muscle wasting. (R. 26). It is perfectly clear to this Court why the ALJ found Gibson to not be credible. As such, there is not, as Gibson alleges, a gap in the logical bridge

10

between the evidence and the ALJ's conclusions regarding Gibson's credibility. Thus, there is no error in the ALJ's credibility analysis. As there is no basis for remand, the Decision will be affirmed.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is AFFIRMED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on February 27, 2024.

/s Holly A. Brady
HOLLY A. BRADY, CHIEF JUDGE
UNITED STATES DISTRICT COURT